**Emile F. duPONT and Margaret D. duPont, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 3021.**

United States District Court
D. Delaware.

Oct. 11, 1968.

As Amended Dec. 12, 1968.

John Biggs, III, Wilmington, Del., Henry T. Reath, Joseph W. Price, 3rd, and David C. Toomey, Duane, Morris & Heckscher, Philadelphia, Pa., of counsel, for plaintiffs.

Alexander Greenfeld, U. S. Atty., John P. Brady, Asst. U. S. Atty., Wilmington, Del., Marvin J. Garbis and Lawrence J. Ross, Dept. of Justice, Tax Div., Washington, D. C., for defendant.

## PRELIMINARY STATEMENT, FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING PARTIAL NEW TRIAL

STEEL, District Judge.

### Preliminary Statement

Plaintiffs sued the Government for a refund of Federal income taxes which plaintiffs paid as a result of the disallowance by the Government of a deduction of $71,932.04 claimed by plaintiffs in their 1961 income tax return. This was the major part of an alleged $95,000 casualty loss to plaintiffs' residence caus-

ed by a storm. After trial this Court held that the casualty loss exceeded the deduction of $23,067.96 allowed by the Government, but that plaintiffs had failed to sustain the burden of proving by legally competent evidence the amount of the excess. This was because the opinion of plaintiffs' expert, Patterson, rested upon the erroneous legal premise that circumstances bearing upon the future condition and use of the property were irrelevant in determining its fair market value immediately after the damage to it. The complaint was therefore dismissed. duPont et al. v. United States, 67–1 U.S. Tax Cas. ¶ 9237 (D.Del.1966).

Plaintiffs thereupon moved to open the judgment and either amend the Findings of Fact, or alternatively to grant a partial new trial. This motion was denied, and an appeal followed.

The Court of Appeals reversed the denial of the motion and ordered a partial new trial. This was because this Court had determined *after* trial that Patterson's post-storm valuation was legally defective, and the Court of Appeals felt that it was unfair not to give plaintiffs a chance to remedy this defect by additional evidence. The Court of Appeals said that plaintiffs should have an "opportunity to offer additional evidence either by further explanation by Patterson or by other witnesses to supply the want of evidence which the court had declared existed." duPont et al. v. United States, 385 F.2d 780 (3d Cir. 1967).

Following receipt of the mandate this Court entered an order on April 23, 1968 declaring that the partial new trial would be limited to the taking of evidence relating to the post-storm fair market value of the property. Upon the Government's insistence, and with the consent of plaintiffs, the order of April 23, 1968 was amended during the trial to allow the Government to prove "pre-storm value" of the property in addition to the post-storm value authorized by the order of April 23, 1968.

To avoid repetition, all of the Findings of Fact and Conclusions of Law contained in this Court's opinion of October 10, 1966 are incorporated herein by reference, except to the extent that they are inconsistent with those contained in this opinion.

*Findings of Fact*

The highest and best use of plaintiffs' property before and after the storm was residential, which included "apartments" consisting of a maximum of 6 units on a single lot.

The fair market value of plaintiffs' property and improvements prior to the storm, based upon Patterson's testimony which I accept, was $305,000.

The fair market value of plaintiffs' property immediately after the storm, based upon Patterson's testimony which I accept, was $210,000. Patterson's testimony as to this post-storm value (unlike his testimony at the initial trial) reflected appropriate consideration of future events bearing upon the condition and use of the property.

The casualty loss suffered by plaintiffs as a result of the storm was $95,000.

The Government permitted plaintiffs to deduct $23,067.96 as a casualty loss. This represents the amount which plaintiffs spent for repairs to the property and improvements resulting from the storm. It disallowed $71,932.04 of the claimed deduction.

On March 9, 1962, the President declared the area in which plaintiffs' property was located to be a disaster area, and ordered the Army Corps of Engineers to do whatever was necessary to protect loss of life, loss of property, and especially the highway which led to Ocean City, and bounded plaintiffs' property on the west. The purpose of the work was not to protect persons like plaintiffs who owned beach front property.

In August 1962, the Corps of Engineers began to pump in sand along the entire beach north and south of, and with plaintiffs' permission in front of, plaintiffs' property in an effort to create a dune line to protect against future ac-

tions by the ocean. This work was completed in late September 1962 and its condition on September 11, 1962 is shown on Px 18.[1] A little later, Worcester County, Maryland, placed a 4-foot fence on top of the sand which the Government had pumped in. The purpose of the fence was to aid the accumulation of additional sand. By October 1962 the sand pumped in by the Government had been built up by action of the elements to an elevation of about 16 feet. (228). By December 1962, sand had accumulated to the top of the fence, as is shown by Dx 10. While the evidence offered by the Government relating to the cost of the work done by the Corps of Engineers lacks desirable precision, the Court finds that the cost was approximately $16,000.

Worcester County in cooperation with the Department of Agriculture also did some planting on the dunes built by the Government but this had not been entirely successful.

The Government's witness, Kolessar, testified that by December of 1962 the mass of the dune put in by the Government provided protection against any storm which might be expected to occur within a 10-year period and was approaching the protection against any storm which might be expected to occur within a 100-period. Nevertheless, he said that the work which the Government did on the beach was temporary or emergency repair work and that the Government recommended further action be taken by others to provide more permanent protection.

Plaintiffs concede that the work done by the Army Engineers and Worcester County gave them protection from the sea to a limited extent. (262). The work did not, however, give plaintiffs' property the same amount of protection as it enjoyed before the storm. From an

aesthetic standpoint the appearance of the property after the work by the Government had been done fell far short of what it had been before the storm and its appeal to a residential buyer was substantially less. The work done by the Army Engineers and by Worcester County did not restore the plaintiffs' property to its pre-storm condition or value. Some portion of the dune which was built up as a result of the work of the Army Engineers and Worcester County was on plaintiffs' property and some portion was between plaintiffs' eastern property line and the ocean. The evidence is in dispute as to whether the major portion of the dune was on or off plaintiffs' property. A resolution of this question is not required for Patterson's post-storm appraisal took into account the work done by the Army Corps of Engineers. (R 538, 540). In his appraisal of the post-storm fair market value of the property Patterson took into account the fact that this work had been done.[2]

There was no competent evidence offered on behalf of the Government's expert, Williamson, as to the fair market value of plaintiffs' property before and after the storm. In any event, if Williamson's testimony should be considered to be competent as the defendant argues, that of Patterson impresses the Court as the more acceptable. It is noteworthy that the Government's requested Findings of Fact suggest no fair market value of plaintiffs' property either before or after the storm.

In October of 1965 plaintiffs were under contract to sell their property for a total price of $375,000 with plaintiffs having the obligation to remove the improvements prior to the sale. Before this sale there had been a continuous and steady increase in all land values from the inlet at Ocean City, Maryland which

1. While Px 18 was not taken in front of plaintiffs' property, it is, nonetheless, a good portrayal of the condition which existed in front of the property.

2. In the absence of evidence that immediately after the storm knowledgeable buyers and sellers would have foreseen that

this work would be done, it is questionable whether the fact that it had been done was properly taken into consideration by Patterson. Such error, however, as there may have been in his testimony in this regard was favorable to the Government.

was south of plaintiffs' property, to the Delaware line, which was north of plaintiffs' property. This increase from the time of the storm in 1962 was as much as 200 to 300 per cent. The greatest inflationary trend began in 1964. A number of the factors which gave rise to this increase in land values probably could not have been foreseen by a knowledgeable seller or buyer immediately after the storm in 1962.

### Conclusions of Law

1. The objection of the defendant, decision on which was reserved at the trial, to the admissibility of evidence of the sale by plaintiffs in 1965 of their property, is sustained. (415). The remoteness of the date of sale from the date of the storm, coupled with the intervening change in land values because of reasons which a knowledgeable seller and a knowledgeable buyer could not probably have foreseen, makes the 1965 sale irrelevant.

2. Section 165 of the I.R.C. of 1954 provides in paragraph (a):

"There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance *or otherwise.*" (Italics added).

Although the alleged loss which plaintiffs sustained was not compensated for by insurance, the Government contends that plaintiffs were compensated for their damage by the work which the Government and Worcester County did after the storm in building up the dunes. Apart from any other reasons which might render section 165(a) inapplicable, the fact that only a minimal part of the dunes and none of the sand fence were on plaintiffs' property prevents section 165 from having any relevance. The casualty loss sustained by plaintiffs should not be reduced by the value of the work which the Army Engineers and Worcester County did.

3. The District Director's disallowance of $71,932.04 of the deduction claimed by plaintiffs was erroneous.

4. The District Director's disallowance of plaintiffs' claim for a refund of $55,887.78 in taxes and interest paid as a result of the disallowance of their deduction was erroneous.

### SUPPLEMENTAL OPINION

Consideration has been given to the reargument granted pursuant to the motion of defendant. The Court is satisfied that the opinion of October 11, 1968, should not be changed except in the respects indicated by the order which is being entered simultaneously herewith.